UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL H. SCHWEIZER, W. STUART
SCHWEIZER, LESLIE E. SCHWEIZER and
KAWADA INDUSTRIES, INC.

                 Plaintiffs,                Civil Action No.
                                           10-CV-6547-MAT

        v.

SIKORSKY AIRCRAFT CORPORATION,

                                        SEPTEMBER __, 2012
                 Defendant.
_____

## <u>ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT</u>
## <u>SIKORSKY AIRCRAFT CORPORATION</u>

      Defendant Sikorsky Aircraft Corporation ("Sikorsky") hereby answers Plaintiffs'
Amended Complaint.  All of the allegations of the Amended Complaint are denied unless
expressly admitted.

      1.  Sikorsky admits that it purchased all of the capital stock of Schweizer Aircraft
Corporation (the "Company") pursuant to a Stock Purchase Agreement dated August 26, 2004
(the "Agreement").  Except as expressly so admitted, Sikorsky has insufficient knowledge or
information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

      2.  As to Paragraph 2, Sikorsky has insufficient knowledge or information upon which to
form a belief and, therefore, leaves Plaintiffs to their proof.

      3.  As to Paragraph 3, Sikorsky has insufficient knowledge or information upon which to
form a belief and, therefore, leaves Plaintiffs to their proof.

4.   As to Paragraph 4, Sikorsky has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

5.   As to Paragraph 5, Sikorsky has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

6.   As to Paragraph 6, Sikorsky has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

7.   Sikorsky admits that the allegations set forth in Paragraph 7 set forth approximate total revenues for Sikorsky and its parent corporation United Technologies Corporation for 2009.

8.   Paragraph 8 is admitted.

9.   As to Paragraph 9, Sikorsky admits that it is one of the world's largest manufacturers of military and commercial helicopters.   Except as expressly so admitted, Sikorsky has insufficient information or knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

10. As to Paragraph 10, Sikorsky has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

11. As to Paragraph 11, Sikorsky has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

12. As to Paragraph 12, Sikorsky has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

13. As to Paragraph 13, Sikorsky has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

14. Sikorsky admits that discussions regarding the possible purchase of the Company occurred first in 2002 and, again, in 2003.  Except as expressly so admitted, the allegations of Paragraph 14 are denied.

15. Sikorsky admits that it was provided with 2003 year end financials for the Company in March 2004.  Except as expressly so admitted, Paragraph 15 is denied.

16. As to Paragraph 16, Sikorsky admits that, after multiple meetings, it made an initial offer to purchase all of the capital stock of the Company.  Except as expressly so admitted, the allegations of Paragraph 16 are denied.

17. As to Paragraph 17, Sikorsky has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

18. Sikorsky has insufficient knowledge or information regarding Plaintiffs' "vision" upon which to form a belief and, therefore, leaves Plaintiffs to their proof. The remaining allegations of Paragraph 18 are denied.

19. Paragraph 19 is denied.

20. As to Paragraph 20, Sikorsky admits that the continued employment for a transition period of Paul, Stuart and Les Schweizer was important to Sikorsky.  Except as expressly so admitted, the allegations of Paragraph 20 are denied.

21. Paragraph 21 is denied.

22. Sikorsky admits that on or about April 30, 2004, it signed a non-binding indication of interest regarding a possible acquisition of the Company.  Except as expressly so admitted, the allegations of Paragraph 22 are denied.

23. Paragraph 23 is admitted.

24. Sikorsky admits that accident investigation reports were included in the files, and refers to those reports for their express terms.  Except as expressly so admitted, the allegations of Paragraph 24 are denied.

25. Sikorsky admits that accident investigation reports were included in the files, and refers to those reports for their express terms.  Except as expressly so admitted, the allegations of Paragraph 25 are denied.

26. Paragraph 26 is denied.

27. Paragraph 27 is admitted.

28. Paragraph 28 is admitted.

29. Sikorsky admits that the RU-38B was a covert surveillance aircraft, and that the Company had a fixed price contract to build three RU-38B aircraft. Except as expressly so admitted, the allegations of Paragraph 29 are denied.

30. As to Paragraph 30, Sikorsky admits that the Company completed a cost-to-completion analysis of the RU-38B Program.  Sikorsky further admits that as of June 30, 2004, the Company concluded that the total cost to complete the RU-38B Program would be $13,752,747.   Except as expressly so admitted, Sikorsky has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

31. As to Paragraph 31, Sikorsky has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

32. As to Paragraph 32, Sikorsky admits that the estimated cost to complete was to be based on the contract in effect as of June 30, 2004.  Except as expressly so admitted, Sikorsky has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

33. Paragraph 33 is admitted.

34. As to Paragraph 34, Sikorsky admits that it entered into the Agreement, and refers to the Agreement for its express terms.   Except as expressly so admitted, the allegations of Paragraph 34 are denied.

35. As to Paragraph 35, Sikorsky admits that Section 2.2(g) of the Agreement provided for Paul, Stuart and Les to enter into employment agreements (which they did) as a condition precedent to Sikorsky's obligation to proceed with the closing and purchase of their stock. Except as expressly so admitted, the allegations of Paragraph 35 are denied.

36. As to Paragraph 36, Sikorsky admits that Paul Schweizer entered into an employment agreement dated September 17, 2004, and refers to the employment agreement for its express terms.  Except as expressly so admitted, the allegations of Paragraph 36 are denied.

37. As to Paragraph 37, Sikorsky admits that Stuart Schweizer entered into an employment agreement dated September 17, 2004, and refers to the employment agreement for its express terms.  Except as expressly so admitted, the allegations of Paragraph 37 are denied.

38. As to Paragraph 38, Sikorsky admits that Les Schweizer entered into an employment agreement dated September 17, 2004, and refers to the employment agreement for its express terms.  Except as expressly so admitted, the allegations of Paragraph 38 are denied.

39. As to Paragraph 39, Sikorsky admits that it entered into the Agreement, and refers to the Agreement for its express terms.   Except as expressly so admitted, the allegations of Paragraph 39 are denied.

40. As to Paragraph 40, Sikorsky admits that it entered into the Agreement, and refers to the Agreement for its express terms.   Except as expressly so admitted, the allegations of Paragraph 40 are denied.

41. As to Paragraph 41, Sikorsky admits that it entered into the Agreement and into Les Schweizer's employment agreement, and refers to the agreements for their express terms. Except as expressly so admitted, the allegations of Paragraph 41 are denied.

42. Sikorsky admits that one million dollars ($1,000,000.00) was reserved for product liability claims on the Company's December 31, 2003 Balance Sheet.  Except as expressly so admitted, the allegations of Paragraph 42 are denied.

43. As to Paragraph 43, Sikorsky admits that it entered into the Agreement, and refers to the Agreement for its express terms.  Except as expressly so admitted, the allegations of Paragraph 43 are denied.

44. As to the allegations in Paragraph 44, Sikorsky admits that prior to Closing, Schweizer claimed to have accounted for actual cost overruns on the RU-38B program by recording the same as losses immediately in the period when identified. Except as expressly so admitted, the remaining allegations of Paragraph 44 are denied.

45. As to Paragraph 45, Sikorsky has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

46. As to Paragraph 46, Sikorsky admits that it entered into the Agreement, and refers to the Agreement for its express terms.  Except as expressly so admitted, the allegations of Paragraph 46 are denied.

47. Paragraph 47 is admitted.

48. Paragraph 48 is denied.

49. Sikorsky admits that after the Closing Date, Randy Simpson became the General Manager of the Company and that Paul, Stuart and Les Schweizer reported directly to Mr.

Simpson, as set forth in their employment agreements.  Except as expressly so admitted, the allegations of Paragraph 49 are denied.

50. Paragraph 50 is denied.

51. As to Paragraph 51, Sikorsky has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiffs to their proof.

52. As to Paragraph 52, Sikorsky admits that certain of its employees "knew that if the actual cost to complete the RU-38B Program exceeded $13.8 million, the $4 million Deferred Payment Amount would be reduced on a dollar-for-dollar basis by the amount of any cost overruns."  Except as expressly so admitted, the allegations of Paragraph 52 are denied.

53. Paragraph 53 is denied.

54. Paragraph 54 is denied.

55. Paragraph 55 is denied.

56. As to Paragraph 56, Sikorsky admits that the Purchase Price Adjustments included a reduction in the Net Asset Value of the Company (and the amount it paid to Plaintiffs) of approximately $146,000 to reflect projected cost overruns on the RU-38B Program.  Except as expressly so admitted, the allegations of Paragraph 56 are denied.

57. Paragraph 57 is denied.

58. Sikorsky admits that it provided written notice to Plaintiffs and to Sellers' Agent regarding cost overruns on the RU-38B Program by letter dated September 21, 2007, and refers to that letter for its express terms.  Except as expressly so admitted, the allegations of Paragraph 58 are denied.

59. Paragraph 59 is denied.

60. Paragraph 60 is denied.

61. Sikorsky admits that the Remcho litigation involved a January 2003 helicopter accident in which Mr. Remcho died.  Sikorsky further admits that Company's management believed that it had fully reserved the potential liability on the Company's December 31, 2003 Balance Sheet, but avers that such reserve was inadequate.  Sikorsky also admits that litigation of the Remcho claim was commenced in January 2005.   Except as expressly so admitted, the allegations of Paragraph 61 are denied.

62. Sikorsky admits that the Kelly/Landy litigation involved an August 2002 helicopter accident in which Messrs. Kelly and Landy were injured.  Sikorsky further admits that Company's management believed that it had fully reserved the potential liability on the company's December 31, 2003 Balance Sheet, but avers that such reserve was inadequate. Sikorsky further admits that litigation of the Kelly/Landy claim commenced before the September 24, 2004 Closing Date.  Except as expressly so admitted, the allegations of Paragraph 62 are denied.

63. Sikorsky admits that it conducted due diligence regarding the Remcho and Kelly/Landy accidents. Sikorsky further admits that the National Transportation Safety Board ("NTSB") and Schweizer employees investigated the accidents and issued reports, and refers to those reports for their express terms. Except as expressly so admitted, the allegations of paragraph 63 are denied.

64. Paragraph 64 is denied.

65. Sikorsky admits that the Company advised Sikorsky of its products liability claims history.  Except as expressly so admitted, the allegations of Paragraph 65 are denied.

66. Paragraph 66 is admitted.

67. Sikorsky admits that the NTSB issued a report, and refers to that report for its express terms. Except as expressly so admitted, the allegations of Paragraph 67 are denied.

68. Sikorsky admits that Les Schweizer advised Sikorsky of his claimed expertise and the Company's history of product liability claims.  Except as expressly so admitted, the allegations of Paragraph 68 are denied.

69. Sikorsky admits that it settled the Remcho litigation in December 2007.  Except as expressly so admitted, the allegations of Paragraph 69 are denied.

70. Paragraph 70 is denied.

71. Sikorsky admits that it settled the Kelly/Landy litigation in June 2008.  Except as expressly so admitted, the allegations of Paragraph 71 are denied.

72. Paragraph 72 is denied.

73. Paragraph 73 is admitted.

74. Paragraph 74 is denied.

75. Paragraph 75 is denied.

76. Paragraph 76 is denied.

77. As to Paragraph 77, Sikorsky admits it has not paid the Contingent Payment Amount or any Interest thereon because no such payments are due under the terms of the Agreement.

## <u>FIRST CAUSE OF ACTION</u>

78. Sikorsky hereby incorporates by reference its responses to Paragraphs 1-77 as if set forth fully herein.

79. Paragraph 79 is denied.

80. Paragraph 80 is denied.

## SECOND CAUSE OF ACTION

81.  Sikorsky hereby incorporates by reference its responses to Paragraphs 1-80 as if set forth fully herein.

82.  Sikorsky refers to Section 6.6 of the Agreement for its complete terms.  Except as expressly so admitted, the allegations of Paragraph 82 are denied.

83.  Sikorsky refers to Section 6.6 of the Agreement for its complete terms.  Except as expressly so admitted, the allegations of Paragraph 83 are denied.

84.  Sikorsky refers to Section 6.6 of the Agreement for its complete terms.  Except as expressly so admitted, the allegations of Paragraph 84 are denied.

85.  Paragraph 85 is denied.

86.  Paragraph 86 is denied.

## THIRD CAUSE OF ACTION - DISMISSED

## FOURTH CAUSE OF ACTION

87.  Sikorsky hereby incorporates by reference its responses to Paragraphs 1-86 as if set forth fully herein.

88.  Paragraph 88 is admitted.

89.  Paragraph 89 is denied.

90.  Paragraph 90 is denied.

91.  Paragraph 91 is denied.

## FIFTH CAUSE OF ACTION

92.  Sikorsky hereby incorporates by reference its responses to Paragraphs 1-91 as if set forth fully herein.

93. As to Paragraph 93, Sikorsky admits that it entered into the Agreement, and refers to the Agreement for its express terms.  Except as expressly so admitted, the allegations of Paragraph 93 are denied.

94. Paragraph 94 is denied.

## SIXTH CAUSE OF ACTION

95. Sikorsky hereby incorporates by reference its responses to Paragraphs 1-94 as if set forth fully herein.

96. Paragraph 96 is denied.

97. Paragraph 97 is denied.

Sikorsky denies that Plaintiffs are entitled to any of the relief requested in the unnumbered "WHEREFORE" paragraphs following Paragraph 97.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovery on the First Cause of Action because they: (i) were aware of settlement negotiations in the Remcho and Kelly/Landy claims; (ii) were notified within sixty (60) days that each claim was finally resolved and of the amount of each settlement; (iii) had actual knowledge of Sikorsky's right to indemnification; and (iv) were not actually and materially prejudiced by any failure to give formal written notice.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovery on the Fifth Cause of Action because they: (i) had access to all necessary records of the costs incurred on the RU-38B program both before and after Closing, (ii) were provided with reasonably detailed cost data supporting the Deferred Payment Amount calculations as set forth in the September 21, 2007 letter referenced in

Paragraph 58 of the Amended Complaint; and (iii) were not actually and materially prejudiced

by any failure to set forth "reasonable detail" in the September 21, 2007 letter

DEFENDANT,

SIKORSKY AIRCRAFT CORPORATION.


By:        s/ Allan B. Taylor
Allan B. Taylor  (AT5853)
Day Pitney LLP
242 Trumbull Street
Hartford, Connecticut 06103
Telephone: (860) 275-0250
Facsimile: (860) 275-0343


Michael A. Weiss  (MW5758)
Day Pitney, LLP
7 Times Square, Times Square Tower
New York, New York 10036
Telephone:    (212) 297-5800
Facsimile:    (212) 881-9042


Steven M. Greenspan  (SG9368)
Associate General Counsel, Litigation
United Technologies Corporation
United Technologies Building
One Financial Plaza
Mail Stop 524
Hartford, CT 06103
Counsel for Sikorsky

42947902.2